UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                            :
UNITED STATES OF AMERICA                    :
                                            :
        - against -                         :        **OPINION & ORDER**
                                            :
MICHAEL YANNOTTI, et al.,                   :        04 Cr. 690 (SAS)
                                            :
        Defendants.                         :
                                            :
-------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Michael Yannotti ("Yannotti") is charged with murder, two separate

attempted murders, and loansharking in connection with an alleged racketeering

enterprise and racketeering conspiracy in violation of the Racketeer Influenced

and Corrupt Organizations Act.  Yannotti has moved to suppress all evidence

against him that was derived from a wiretap of a cellular telephone that he used

while in Florida in 1996.  In a Memorandum Opinion and Order dated April 15,

2005, I denied three grounds for suppressing the wiretap evidence:  (1) that there

was insufficient probable cause to support the wiretap authorization; (2) that the

Government's application contained knowing and material falsehoods, warranting

a hearing under *Franks v. Delaware*; and (3) that the tapes of the wiretapped

conversations had been improperly sealed.[1] However, I allowed additional briefing of a fourth ground for suppression — that the Government was required to seek an amended wiretap order naming Yannotti as an interceptee — which was developed by Yannotti's new counsel at oral argument on April 12, 2005.[2] Yannotti now contends that because the Government failed to seek an amended wiretap order, the interception of his calls (1) constituted an unreasonable search in violation of the Fourth Amendment, (2) exceeded the scope of the wiretap order, or in the alternative (3) rendered the wiretap order "akin to a general warrant."[3] For the reasons that follow, Yannotti's motion to suppress is denied.

## II.    BACKGROUND[4]

In April 1996, the Government applied to Judge William J. Zloch of the United States District Court for the Southern District of Florida for a wiretap

---

[1]    *See United States v. Gotti*, No. 04 Cr. 690, 2005 WL 859244, at *8 (S.D.N.Y. Apr. 15, 2005).

[2]    *See id.*

[3]    Reply Memorandum of Law on Defendant Michael Yannotti's Motion to Suppress Electronic Surveillance at 7-8.

[4]    Familiarity with my April 15 Memorandum Opinion and Order is presumed. I state here only those facts that pertain to the ground for suppression that is the subject of this Opinion.

order to intercept wire communications of Nicholas Corozzo,[5] six other named

interceptees, and "others yet unknown," over a cellular telephone that had been

supplied to Corozzo by a confidential source.[6] The application alleged that

Corozzo and the others were engaged in a racketeering conspiracy, whose

activities included fraud, the sale or receipt of stolen goods, extortion,

loansharking, and money laundering.[7] According to the application, a confidential

source "furnished the target cellular telephone to COROZZO for his use in

conducting the criminal activities referred to herein."[8] The application further

stated that "COROZZO is presently using the target cellular telephone."[9]

On the basis of the application, Judge Zloch found that there was

probable cause to believe that Corozzo, the six named interceptees, and "others as

---

[5]    The application identified Corozzo as a "capo" in the Gambino Organized Crime Family who resided in New York City, but supervised criminal activities in both New York and southern Florida. *See* Affidavit of Special Agent Alan John Hogan, Ex. B to Affidavit of Joseph R. Corozzo, former counsel to Yannotti ("Corozzo Aff."), ¶ 13.

[6]    *Id.* ¶ 3. The other named interceptees were Lenny DiMaria, Ralph Davino, Sidney Alwais, David Alwais, Louis Scida, and Anthony Ruggiano, Jr. *See id.*

[7]    *See id.* ¶ 4.

[8]    *Id.* ¶ 77.

[9]    *Id.*

yet unknown" were engaged in a racketeering conspiracy and, furthermore, that the target cell phone would be used "in connection with [the] commission" of this criminal activity.[10] Accordingly, Judge Zloch authorized a thirty-day wiretap, commencing on April 12, 1996.[11]

In a ten-day progress report submitted to the court on April 22, 1996, the Government stated that prior to returning to New York on April 13 — the day after the wiretap order was issued — Corozzo gave the target cellular phone to Yannotti, who was identified as an associate in the Gambino Crime Family who reported directly to Corozzo and was the "muscle" in his crew.[12] According to the report, Corozzo indicated at that time that he would return to southern Florida "within a couple of weeks."[13] No calls made by Corozzo were ever intercepted over the target phone prior to his departure. Rather, the logs maintained by the monitoring agents show that all the calls from the beginning of the wiretap on

---

[10] Order Authorizing the Interception of Communications, Misc. No. 96-2-WJZ ("Wiretap Order"), Ex. A to Corozzo Aff., at 1, 3. As noted above, I have already found that there was a substantial basis for Judge Zloch's probable cause determination. *See Gotti*, 2005 WL 859244, at *9.

[11] *See* Wiretap Order at 4.

[12] Ten Day Progress Report ("10-Day Report"), Ex. C to Corozzo Aff., ¶¶ 4-5.

[13] *Id.* ¶ 4.

April 12 until 6:21 p.m. on April 13 were from "UF" — *i.e.*, an unidentified

female — or "Eileen" (alternatively spelled "Ilean").[14] According to the progress

report, at 8:45 p.m. on April 13, Yannotti placed a call on the target phone to

Salvatore Pecchio, who informed him that Corozzo had been dropped off at the

Fort Lauderdale Airport.[15] The report stated that Corozzo "had just left for New

York."[16] Thus, the report shows that when Corozzo departed for New York, the

Government knew that he left the target cell phone behind in Florida.

     After Corozzo's departure, the Government continued monitoring the

target phone. The progress report alleged that Yannotti placed two calls, albeit in

guarded language, concerning the collection of loansharking payments.[17]

According to the Government, these payments were owed to Corozzo.[18] On the

basis of these conversations, the report concluded that Yannotti, Corozzo, and

others would continue using the target phone to discuss the offenses described in

---

[14]    The progress report identified "Eileen" as Eileen Casotto, reportedly a girlfriend of Corozzo. *See id.* ¶ 9.

[15]    *See id.* ¶ 10.

[16]    *Id.*

[17]    *See id.* ¶¶ 11-12.

[18]    *See id.*

the wiretap order.[19]  The report also stated that the Government would identify

Yannotti as a named interceptee in the event that the Government sought an

extension of the wiretap.[20]  No extension was sought.

## III.  APPLICABLE LAW

The Fourth Amendment requires that a warrant specify "the place to

be searched, and the persons or things to be seized."[21]  "In the wiretap context,

those requirements are satisfied by identification of the telephone line to be tapped

and the particular conversations to be seized."[22]

In addition, Title III of the Omnibus Crime Control and Safe Street

Act of 1968[23] governs the authorization of wiretaps.  Section 2518 requires that an

application for a wiretap order include, among other things:

> (i) details as to the particular offense that has been, is being, or is
> about to be committed, (ii) . . . a particular description of the
> nature and location of the facilities from which or the place where
> the communication is to be intercepted, (iii) a particular
> description of the type of communications sought to be
> intercepted, [and] (iv) the identity of the person, if known,

---

[19]   *See id.* ¶ 13.

[20]   *See id.* ¶ 6.

[21]   U.S. CONST. amend. IV.

[22]   *United States v. Donovan*, 429 U.S. 413, 427 n.15 (1977).

[23]   18 U.S.C. §§ 2510-2522.

committing the offense and whose communications are to be intercepted.[24]

Similarly, the wiretap order itself must specify:

> (a) the identity of the person, if known, whose communications are to be intercepted; (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted; [and] (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates.[25]

A wiretap order need not identify every person whose conversations may be intercepted in order to comply with the Fourth Amendment.[26] Rather, "a court must analyze the facts of each case in order to determine whether the wiretap order and any monitoring searches undertaken pursuant to it conform to fourth amendment requirements."[27]

Section 2515 mandates the suppression of the contents of any intercepted wire communication as well as any evidence derived therefrom "if the

---

[24]    *Id.* § 2518(1)(b).

[25]    *Id.* § 2518(4). This subsection also requires the order to identify the agency authorized to intercept the communications and to specify the period of time during which the interception is authorized.

[26]    *See United States v. Figueroa*, 757 F.2d 466, 472 (2d Cir. 1985).

[27]    *Id.* The Second Circuit has held that compliance with Title III amounts to compliance with the Fourth Amendment. *See United States v. Bianco*, 998 F.2d 1112, 1121 (2d Cir. 1993) ("Surveillance that is properly authorized and carried out under Title III complies with the fourth amendment.").

disclosure of that information would be in violation of this chapter."[28] Section

2518 lists the circumstances that trigger suppression under section 2515:

> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was
> intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order
> of authorization or approval.[29]

The Supreme Court has explained that communications are "unlawfully

intercepted" in violation of the first prong of the above list only "where there is

failure to satisfy any of those statutory requirements that directly and substantially

implement the congressional intention to limit the use of intercept procedures to

those situations clearly calling for the employment of this extraordinary

investigative device."[30]

## IV. DISCUSSION

Yannotti contends that once the Government knew that Corozzo had

left Florida and that the target cell phone was no longer in his possession because

it had been given to Yannotti, the Government was required to cease intercepting

communications and to seek a new wiretap order authorizing the interception of

---

[28]    18 U.S.C. § 2515.

[29]    *Id.* § 2518(10)(a).

[30]    *United States v. Giordano*, 416 U.S. 505, 527 (1974).

Yannotti's communications over the phone. As noted above, Yannotti makes three arguments in support of this position. *First*, relying on *Katz v. United States*,[31] he maintains that, under the circumstances of this case, the interception of Yannotti's calls was an unreasonable search in violation of the Fourth Amendment. *Second*, he argues that the order cannot be reasonably interpreted as authorizing continuing interceptions in the event that the phone was no longer in Corozzo's possession and, consequently, the Government exceeded the scope of the order. *Third* and finally, Yannotti claims that construing the wiretap order as allowing the continued interception of calls after Corozzo was no longer in possession of the phone would convert the order into a general warrant, also in violation of the Fourth Amendment.

To begin, Yannotti's reliance on *Katz* is misplaced. In that case, the Government intercepted communications from a public telephone *without a court order*. Because the officers failed to obtain a warrant, and none of the exceptions to the warrant requirement applied, the Supreme Court found that the surveillance violated the Fourth Amendment and, therefore, reversed the petitioner's conviction.[32] By contrast, the agents in this case had a warrant to intercept

---

[31]   389 U.S. 347 (1967).

[32]   *See id.* at 357-59.

communications over the cell phone used by Yannotti. Consequently, Yannotti's

reliance on *Katz* begs the question of whether the wiretap order authorized the

agents to intercept his calls. Moreover, as the Supreme Court noted in a case in

which the Government did not identify several targets of a wiretap,

> the omission on the part of law enforcement authorities was not
> a failure to seek prior judicial authorization, but a failure to
> identify every individual who could be expected to be overheard
> engaging in incriminating conversations. That the complete
> absence of prior judicial authorization would make an intercept
> unlawful has no bearing on the lawfulness of an intercept order
> that fails to identify every target.[33]

In short, the interception of Yannotti's calls did not constitute a warrantless search

requiring suppression under *Katz*.[34]

Nor did the continued interception of Yannotti's calls exceed the

scope of the wiretap order. As an initial matter, the order authorized the

interception of the communications not only of Corozzo, but also of six additional

named targets as well as "others yet unknown." On its face, the order does not

limit interception to calls placed by Corozzo himself or even while Corozzo was in

---

[33]    *Donovan*, 429 U.S. at 436 n.24.

[34]    *Cf. United States v. Duran*, 189 F.3d 1071, 1085 (9th Cir. 1999)
(holding that a wiretap order's failure to identify the electronic serial number on
the interceptee's new cell phone was not a warrantless search requiring
suppression under *Katz*).

possession of the target cell phone. On the other hand, the wiretap application plainly anticipated that the phone would be in his possession. Thus, Judge Zloch's probable cause determination was premised on Corozzo's possession of the phone. Cellular telephones, however, are mobile and can be easily handed from one person to another. Consequently, if the Government were not allowed to intercept outgoing calls made on the target cell phone by parties other than Corozzo without first obtaining a new wiretap authorization, it would be effectively impossible to wiretap this or any other cell phone.[35]

Yannotti argues that once it became clear, as stated in the progress report, that Corozzo could not use the phone for "a couple of weeks" for the simple reason that he left the phone in Florida when he departed for New York, continued surveillance became especially problematic. Indeed, it could also be argued that Corozzo's departure dissipated the basis for the probable cause determination, thus requiring the Government to seek a new wiretap order before

---

[35] In the context of traditional land lines, courts have upheld wiretaps of telephones that may be used by many individuals, including innocent persons as well as suspects. *See, e.g., Figueroa*, 757 F.2d at 473 (upholding wiretap of a prison telephone that was available to fifty-nine inmates, few of whom were suspects in the investigation). *Cf. United States v. Ambrosio*, 898 F. Supp. 177, 180 (S.D.N.Y. 1995) (upholding wiretap of two telephones located in a pizzeria that were used to conduct the pizzeria's legitimate business as well as to negotiate narcotics transactions).

continuing surveillance of the phone. However, the Government also stated in the same progress report that, despite Corozzo's departure, it had reason to believe that the target phone would "continue to be used . . . to discuss the offenses described in the Court's order."[36] More specifically, the report indicated that the Government suspected that Yannotti, although not named in the original application, was involved in these offenses.[37] This suspicion was reasonable given Yannotti's alleged role in the Gambino Crime Family and as the "muscle" in Corozzo's crew. Thus, although Corozzo no longer possessed the phone, there was probable cause to believe that it remained an instrumentality of the alleged conspiracy. As a result, the interception of Yannotti's calls did not exceed the scope of the wiretap order.[38]

In regard to Yannotti's third argument, the interception of Yannotti's (and Eileen Cosotto's) calls did not convert the wiretap order into a general

---

[36]    *See* 10-Day Report ¶ 13.

[37]    *See id.* ¶¶ 4-6, 11-12.

[38]    *Cf. United States v. Smith*, 909 F.2d 1164, 1167 (8th Cir. 1990) (holding that police officers were not required to minimize an incoming call to a home telephone after the named target of the wiretap had left the state because they reasonably suspected that the residence would remain "a conduit of information during the trip" and, more particularly, that both participants in the call were co-conspirators with the defendant).

warrant. In *United States v. Figueroa*, the Second Circuit held that the

interception of calls made at a "quasi-public" telephone in a prison by individuals

who were not named in the wiretap order as targets of the Government's

investigation did not amount to a general warrant.[39] In that case, the court noted

that the language of Title III "anticipates interception of calls of people whose

identities are not known at the time of the application and order."[40] The wiretap

order in this case did not give the monitoring agents unfettered discretion to

intercept any conversations whatsoever occurring over the target cell phone.[41] By

specifying, as section 2518(4) requires, the offenses to which the communications

to be intercepted related, the order limited the conversations that the agents could

lawfully intercept. In addition, also in accord with Title III, the order required the

---

[39]     *See Figueroa*, 757 F.2d at 473.  *See also United States v. Kahn*, 415
U.S. 143, 154-55 (1974) (rejecting "general warrant" argument where federal
agents intercepted the conversations over two home telephones of the named
target's wife, who was not identified as an interceptee in the wiretap application
because the Government was unaware that she was involved in her husband's
illegal gambling activities until the wire interceptions had begun).

[40]     *Figueroa*, 757 F.2d at 470.

[41]     *See Kahn*, 415 U.S. at 154 ("[N]either the statute nor the wiretap
order in this case would allow federal agents . . . total unfettered discretion."). *Cf.*
*United States v. Mankani*, 738 F.2d 538, 546 (2d Cir. 1984) (stating that a general
warrant is "impermissible because it gives the search party virtually unfettered
discretion to seize anything they see").

agents to minimize the interception of innocent conversations.[42] Finally, the order limited the length of surveillance to thirty days and required status reports to be submitted to Judge Zloch every ten days. Therefore, despite the order's failure to name Yannotti as a target, the interception of his calls did not transform that order into a general warrant.

## V.  CONCLUSION

For the foregoing reasons, Yannotti's motion to suppress the fruits of electronic surveillance of the cellular telephone he used while in Florida in 1996 is denied.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           May 25, 2005

---

[42]     *See Figueroa*, 757 F.2d at 471 ("Innocent parties are protected from unreasonable surveillance by the requirement contained in § 2518(5) that surveillance 'shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception.'").

**For the Government:**

Michael G. McGovern
Joon H. Kim
Victor Hou
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2198


**For Defendant Michael Yannotti:**

Diarmuid White, Esq.
White & White
148 East 78th Street
New York, New York 10021
(212) 861-9850


**For Defendant John A. Gotti:**

Marc Allan Fernich, Esq.
Law Office of Marc Fernich
570 Lexington Avenue, 16th Floor
New York, New York 10022
(212) 446-2346

Jeffrey Lichtman, Esq.
Law Office of Jeffrey Lichtman
1790 Broadway, Suite 1501
New York, New York 10019
(212) 581-1001

**For Defendant Joseph D'Angelo:**

Barry Levin, Esq.
666 Old Country Road
Suite 406
Garden City, New York 11530
(516) 222-4500


**For Defendant Louis Mariani:**

Charles F. Carnesi, Esq.
1225 Franklin Avenue
Garden City, New York 11758
(516) 512-8914