UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA

- against -

JOHN A. GOTTI, MICHAEL YANNOTTI,
and LOUIS MARIANI,

          Defendants.

------------------------------------------------------------X

**OPINION AND ORDER**

**S1 04 Cr. 690 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      Michael Yannotti is charged with, *inter alia*, conducting the affairs of a criminal enterprise known as the Gambino Organized Crime Family ("Gambino Family") through a pattern of racketeering activity, as well as conspiring to participate in the same enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Government alleges that Yannotti committed four predicate acts in connection with the RICO charges: (1) the murders of Robert Arena and Thomas Marenga; (2) the kidnaping and attempted murder of Curtis Sliwa; (3) the attempted murder of Robert Tarantola; and (4) loansharking. The Government seeks to introduce into evidence, as so-called "enterprise proof," testimony of a cooperating witness, Andrew DiDonato, concerning the uncharged murder of Todd Alvino, which Yannotti allegedly

committed in or about February 1985. On August 12, 2005, the Court issued an oral ruling that evidence of this uncharged murder is inadmissible. The reasons for this decision are now set forth more fully below.

## II.   BACKGROUND

Prior to trial, the Government proffered that in August 1984, Alvino, a Luchese Family associate, murdered Albert Lattanzi, a Gambino Family associate who was close friends with members of Gambino captain Nicholas Corozzo's crew. According to the proffer, members of Corozzo's crew, including Yannotti and DiDonato, searched for Alvino for months in order to murder him. Alvino was eventually murdered in or about February 1985. The Government further proffered that DiDonato would testify that Corozzo ordered or directed his crew to murder Alvino and that Yannotti later admitted to DiDonato that Yannotti and other members of Corozzo's crew indeed committed the murder.

## III.   DISCUSSION

### A.   Relevance

The initial question is whether DiDonato's testimony concerning the murder of Alvino is relevant to the charge that the defendant Yannotti conducted the affairs of the Gambino Family through a pattern of racketeering activity. Evidence is relevant if it has "any tendency to make the existence of any fact that

-2-

is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[1] Yannotti argues that the Alvino murder was an independent act of Lattanzi's friends, rather than a crime attributable to the charged Gambino Family enterprise. The Court permitted a voir dire of DiDonato outside the presence of the jury on August 11, 2005. DiDonato testified that while Corozzo never in fact ordered the murder, he repeatedly made remarks to his crew, including Yannotti, indicating that he would approve if they avenged their friend. In addition, Corozzo was aware that his crew was searching for Alvino several days a week over a period of months. DiDonato further stated that after a period of time, when Alvino was appearing openly and frequently in the neighborhood, the fact of his continued survival became an embarrassment to the crew. Finally, DiDonato testified that soon after the murder occurred Corozzo greeted Yannotti warmly and thereafter treated him as "first among equals" in his crew.

Although Corozzo did not order the alleged murder, a reasonable juror could infer that the crime was committed to further the goals of the Gambino Family enterprise. The indictment alleges that one of the enterprise's purposes was "preserving and augmenting the power, territory, and financial profits of the

---

[1]     Fed. R. Evid. 401.

enterprise through murder, intimidation, violence, and threats of physical and economic harm."[2] DiDonato has testified that Corozzo's crew was competing in Canarsie with the Luchese crew of which Alvino was a member. Consequently, a juror could reasonably conclude that killing Alvino was more than just a personal vendetta for the members of Corozzo's crew. The crew's reputation hinged on its ability to demonstrate that rivals could not harm one of its friends with impunity, and Corozzo's encouragement indicated as much. The Alvino murder thus furthered the goals of the Gambino Family by preserving or even augmenting the power of Corozzo's crew, at the expense of its Luchese rivals. Thus, evidence of the murder is relevant to show the nature of the charged RICO enterprise.[3]

**B.    Rule 403**

Like any other evidence, however, DiDonato's testimony is subject to the limitations of Rule 403, which authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair

---

[2]    *See* Indictment S1 04 Cr. 690 (SAS) ¶ 10.b.

[3]    *Cf. United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (holding that a district court did not abuse its discretion in finding that evidence of uncharged murders of rivals by various gang members, including one of the defendants, was relevant to show the existence and nature of the charged RICO enterprise, which used such acts of violence in furtherance of a narcotics conspiracy).

-4-

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[4]  In its written submissions and in oral argument, the Government contends that the Alvino murder is probative of (1) the means and methods employed by the Gambino Family enterprise, (2) the defendant Yannotti's role within that enterprise, and (3) Yannotti's status as "first among equals" in Corozzo's crew. The defendant argues that allowing evidence of an uncharged murder would be unfairly prejudicial because it might sway the jury to convict him of the double homicide.

With regard to the Government's first rationale, the probative value of this evidence is "undercut by the availability of other, less prejudicial evidence that makes the same point[]."[5]  One cooperating witness, Frank Fappiano, has already testified at length concerning murders and other violent crimes that he admits to having committed in connection with his participation in the charged

---

[4]     Fed. R. Evid. 403. *See also Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

[5]     *United States v. Nachamie*, 101 F. Supp. 2d 134, 142 (S.D.N.Y. 2000). *Accord Old Chief*, 519 U.S. at 182-183 ("[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point.").

enterprise. From Fappiano's testimony and that of other cooperators, it will be amply clear — nor is it seriously disputed — that murder is one of the "means and methods" employed by the Gambino Family. Thus, using the Alvino murder to prove this fact would be cumulative.

With regard to the second rationale, the evidence is also cumulative. Multiple witnesses, including DiDonato, will testify that Yannotti was a made member of the Gambino Family as well as a member of Corozzo's crew. There is no need to admit evidence of the Alvino murder merely to show that Yannotti participated in the enterprise. To the extent that it is offered to show that Yannotti's specific role within the organization was that of an enforcer, or indeed a killer, the Alvino murder is also cumulative. Yannotti is already charged with committing violent crimes, including a double homicide and two attempted murders, in connection with his participation in the Gambino Family enterprise. If the Government can prove these charges beyond a reasonable doubt, it will have succeeded in showing his "role" in the enterprise, without resorting to proof of an uncharged murder.

Finally, Yannotti's status as "first among equals" is a fact of minimal consequence to the determination of the action. Whether Yannotti played a leadership role in the organization is an issue to be considered at sentencing, if he

is convicted; for present purposes, his status in the organization has little bearing on his guilt or innocence of the charged crimes. The jury can convict him whether he was an associate, a soldier, a captain, or a boss. The Government further contends that the jury needs to learn of the Alvino murder in order to understand why DiDonato later took orders from Yannotti, at a time when both men were still associates. The Government apparently believes that the jury will be confused that two men who occupy the same rank in the official hierarchy of the Gambino Family would in fact possess different levels of authority.

The probative value of this explanation, however, is substantially outweighed by the danger of unfair prejudice to the defendant. Admitting evidence of an uncharged murder raises serious concerns, in particular where the defendant is already charged with a double homicide and two attempted murders. *First*, because the Alvino murder was not charged in the indictment, which the grand jury originally issued over a year ago, Yannotti has had little notice of this serious allegation. The Government first proffered that it would seek to prove this murder seven weeks before trial.[6] While the Government was not tardy in informing the defendants of its proposed "enterprise proof," the fact remains that

_____

[6] *See* 6/20/05 Letter of Assistant United States Attorney Michael G. McGovern to the Court at 12-13.

seven weeks is a short time to investigate and respond to charges of a murder that allegedly occurred twenty years ago. *Second*, and more importantly, there exists a danger that the jury might improperly infer from the evidence of the Alvino murder that Yannotti had a propensity to commit murders and later acted in conformity therewith in murdering Arena and Marenga and attempting to murder Curtis Sliwa and Robert Tarantola. In this context, no limiting instruction could effectively prevent this impermissible inference. "The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense."[7] Unlike Rule 404(b) evidence, which is admissible only for limited purposes, such as to show the accused's motive or knowledge, the evidence of the Alvino murder is offered as direct proof that Yannotti is a murderer. Thus, the evidence's probative purpose cannot be separated from its devastating prejudicial effect. In view of the slight probative value of this evidence, the difficulty of preparing a defense of an uncharged murder in a short period of time, and the very real danger that the jury will improperly consider such evidence as reflecting a propensity to commit murders, a Rule 403 balancing requires that the evidence regarding Yannotti's participation in

---

[7]     *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994).

the Alvino murder be excluded.

## IV. CONCLUSION

In sum, the evidence of the Alvino murder is inadmissible under Rule 403 because the risk of unfair prejudice to the defendant substantially outweighs the probative value of that evidence.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           August 16, 2005

**For the Government:**

Michael G. McGovern
Joon H. Kim
Victor Hou
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2198

**For Defendant Michael Yannotti:**

Diarmuid White, Esq.
White & White
148 East 78th Street
New York, New York 10021
(212) 861-9850

Patrick J. Brackley, Esq.
377 Broadway, Suite 801
New York, New York 10013
(212) 334-3736

**For Defendant John A. Gotti:**

Jeffrey Lichtman, Esq.
Law Office of Jeffrey Lichtman
1790 Broadway, Suite 1501
New York, New York 10019
(212) 581-1001

Marc Allan Fernich, Esq.
Law Office of Marc Fernich
570 Lexington Avenue, 16th Floor
New York, New York 10022
(212) 446-2346

**For Defendant Louis Mariani:**

Charles F. Carnesi, Esq.
1225 Franklin Avenue
Garden City, New York 11758
(516) 512-8914